IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 08-384 |
| | ) See Civil Action No. 11-1238 |
| | ) |
| CALVIN LEE DYE, | ) |
| | ) |
| Defendant/petitioner. | ) |

MEMORANDUM OPINION

BLOCH, District J.

Petitioner, on September 28, 2011, filed a pro se "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (Doc. No. 64) and memorandum in support thereof (Doc. No. 65). Upon consideration of this motion, and upon further consideration of the Government's response thereto (Doc. No. 68), filed on November 14, 2011, and Petitioner's "Traverse" (Doc. No. 71), filed on January 30, 2012, the Court denies the Petitioner's motion for the reasons set forth below.

I. **Background**

On May 12, 2009, Petitioner was convicted at trial of one count of attempted coercion and enticement of a minor in violation of 18 U.S.C. § 2422(b) (Count One), and one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count Two). The Court ordered a Presentence Investigation Report ("PIR"), and Petitioner filed his Position with Respect to Sentencing Factors on July 16, 2009, raising several objections to the PIR. Petitioner's primary objection was to the application of the cross-reference found in §2G1.3(c)(1) of the United States Sentencing Guidelines ("USSG"). He asserted that the cross-reference was inapplicable because (i) he did not seek a minor to engage in sexual explicit

1

conduct "by notice or advertisement", and (ii) his offense was not carried out "for the purpose of producing a visual depiction of such conduct," as required for the cross-reference to apply.[1] (Doc. No. 40). The Court issued its tentative findings on July 30, 2009, and accepted the PIR as accurate.[2] (Doc. No. 42). On August 6, 2009, the Court granted Petitioner's request for a downward variance and sentenced Petitioner to 180 months' imprisonment at each of Counts One and Two, to be served concurrently, followed by 10 years' supervised release at each of Counts One and Two, to be served concurrently.[3] Petitioner filed a Notice of Appeal from the Court's final judgment on August 14, 2009, challenging his conviction and sentence. (Doc. No. 46). The United States Court of Appeals for the Third Circuit ("Third Circuit") affirmed Petitioner's conviction and sentence on October 25, 2010. (Doc. No. 58). On September 28, 2011, Petitioner, acting pro se, filed the present Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 64).[4]

---

[1] Petitioner also argued that he was entitled to an adjustment under § 3E1.1 for acceptance of responsibility because he did not generally contest his guilt as to Count Two at trial.

[2] Specifically, the Court found that the cross-reference properly was applied and that Petitioner was not entitled to an adjustment under § 3E1.1 because "his decision not to contest guilt as to merely some of the criminal conduct for which he was charged, does not under the totality of the circumstances, constitute acceptance of responsibility." Tentative Findings (Doc. No. 42).

[3] Petitioner's recommended guideline range of imprisonment was 235-293 months, but the Court found that a sentence within this range was greater than necessary in light of the § 3553(a) factors.

[4] On September 29, 2011, in accordance with United States v. Miller, 197 F.3d 644 (3d Cir. 1999), the Court issued an Order advising Petitioner that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prohibits consideration of a second or successive habeas petition absent certification from the Third Circuit that certain very specific and rare circumstances exist. With that in mind, Petitioner was ordered to advise the Court as to how he wished to proceed in this case, specifically, whether he wished to have his motion ruled upon as filed and lose the ability to file successive petitions absent Third Circuit certification, or whether he wished to withdraw the motion and file one all-inclusive Section 2255 petition within the one-year statutory period of the AEDPA. (Doc. No. 83). Petitioner indicated he wished to have his motion ruled upon as filed.

## II. Discussion

Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veteran Affairs, 165 F.3d 244, 247 (3d Cir. 1999). However, even a pro se plaintiff must be able to prove a "set of facts in support of his claim which would entitle him to relief." Haines, 404 U.S. at 520-21 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Petitioner brings his pro se motion pursuant to 28 U.S.C. § 2255.[5] An evidentiary hearing is not required on a Section 2255 motion if "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

Petitioner's motion is premised upon three separate claims of ineffective assistance of counsel. Indeed, the proper and preferred vehicle for advancing claims of ineffective assistance of counsel is through a Section 2255 motion. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

In order to prevail on a claim of ineffective assistance, a defendant:

> must show both that: (1) counsel's representation fell below an objective standard of "reasonableness under prevailing professional norms;" and (2) [he] suffered prejudice as a result – that is, there is a reasonable probability that, but for the counsel's deficient performance, *the result of the proceeding would have been different.*

Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996) (citing Strickland v. Washington, 466 U.S. 668, 694 (1984)) (emphasis added). Although Strickland requires a successful demonstration of

---

[5] This statute permits a "prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

3

both ineffectiveness and prejudice, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."[6] Strickland, 466 U.S. at 697.

Petitioner's first claim of ineffective assistance arises out of his trial counsel's alleged failure to properly advise him of his actual sentencing exposure. Petitioner contends that counsel misadvised him that the cross-reference in § 2G1.3(c)(1) of the Guidelines would not apply to his offenses at sentencing and that he suffered prejudice as a result of counsel's misinformation because the application of the cross-reference increased his offense level from 34 to 38, which in turn increased his sentencing range.[7] While Petitioner recognizes that the cross-reference would have applied regardless of whether he pled guilty or went to trial, he alleges that if he knew about its applicability and effect prior to going to trial then he would have pled guilty in order to receive a three-level reduction for acceptance of responsibility. Petitioner alleges that a reduction for acceptance of responsibility would have lowered his guideline range and that a lower sentencing range may have induced the Court to impose the statutory mandatory minimum sentence of ten years since he was a first-time offender.

Petitioner's second claim of ineffective assistance is grounded in his appellate counsel's alleged failure to argue the issue of whether Amendment 732 to the USSG applied to his case on

---

[6] Indeed, the Third Circuit has endorsed "the practical suggestion in Strickland to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005)(quoting United States v. Mccoy, 410 F.3d 124, 132 n.6 (3d Cir. 2005).

[7] The cross-reference was triggered by Petitioner's conduct in "causing, transporting, permitting or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct." USSG § 2G1.3(c)(1). The cross-reference prompted the application of an entirely new guideline section, § 2G2.1. This in turn increased his guideline range from 151-188, which was based on an overall offense level of 34 and criminal history category of I, to 235-293 months' imprisonment, which was based on an overall offense level of 38 and a criminal history category of I.

direct appeal. Petitioner argues that Amendment 732 was a clarifying amendment that should have been considered and applied retroactively so that he could have received a two-level reduction in his overall offense level. Specifically, Petitioner alleges that consideration of this amendment would have prevented the application of the undue influence enhancement under § 2G1.3(b)(2)(B) because it clarified that the enhancement is inapplicable where the only minor involved in the offense was an undercover police officer.

Finally, Petitioner asserts that his trial counsel was ineffective in failing to investigate his mental competency and in failing to request a competency hearing. Petitioner alleges that in light of counsel's knowledge regarding Petitioner's extreme depression, confusion, disorientation, and periods of amnesia, he had cause to question Petitioner's competency and that his failure to do so caused Petitioner prejudice because he was convicted and sentenced without a determination that he was competent to stand trial.

The Court finds no merit in any of Petitioner's arguments. Petitioner's first contention must fail because he cannot demonstrate that he suffered prejudice as a result of any failure on the part of trial counsel to properly advise him that the cross-reference in § 2G1.3(c)(1) would apply and increase his sentencing exposure.[8] As an initial matter, the Court notes that the cross-reference would have applied regardless of whether Petitioner pled guilty or went to trial. The cross-reference in § 2G1.3(c)(1) prompted the application of an entirely new guideline section, § 2G2.1, and had the effect of increasing Petitioner's overall offense level from 34 to 38 which in turn increased his guideline sentencing range. Petitioner's guideline range was increased from

---

[8] The Court will follow the United States Supreme Court's endorsed practice of first analyzing ineffective assistance claims under the prejudice prong. See Strickland, 466 U.S. at 697.

5

151 - 188 months' imprisonment, which was based on an overall offense level of 34 and criminal history category of I, to 235 - 293 months' imprisonment.[9]

The heart of Petitioner's argument is that he was prejudiced by his counsel's failure to advise him that he was subject to an increased sentencing range as a result of the cross-reference and he argues that he would have pled guilty in order to receive an additional three-level reduction in his sentencing calculation for acceptance of responsibility if he had known about its applicability and effect. The difficulty with Petitioner's argument, however, is that he was not sentenced within the increased sentencing range that the cross-reference triggered and was instead sentenced within the very range that he argues would have applied if he had pled guilty and received all three acceptance points.

While it is true that Petitioner's recommended guideline range at sentencing was 235 to 293 months' imprisonment, the Court ultimately sentenced him to 180 months' imprisonment at each count to be served concurrently. After considering the factors set forth in Section 3553(a), the Court declined to sentence Petitioner within the recommended guideline range and granted his request for a downward variance because it found that a sentence within the 235-293 range would be "too severe of a sentence." Sentencing Transcript (Doc. No. 53) at 19. The Court specifically determined that a sentence which was significantly lower than the guideline range but *"five years higher than the statutory minimum"* was adequate to address the concerns outlined in Section 3553(a). (Id.) at 21 (emphasis added).[10]

---

[9] This guideline range of imprisonment was based on an overall offense level of 38 and a criminal history category of I.

[10] The Court found that "a sentence of imprisonment of over 10 years, the statutory minimum in this case, would more than adequately deter most potential perpetrators" and determined that while there was a need to protect the public, "a lengthy term of supervised release with strict conditions following incarceration will allow the Court and the probation officer to monitor and regulate the Defendant's behavior well after his release." (Doc. No. 53) at 19-20. The Court

6

Assuming that Petitioner would have pled guilty if he had received accurate advice about the application and effect of the cross-reference, his recommended guideline range would have been 168-210 months' imprisonment.[11] Petitioner's actual sentence of 180 months' imprisonment constitutes a mid-range sentence within the very range he alleges would have applied had he pled guilty. Petitioner's sentence also is within the guideline range that originally would have applied if the cross-reference was not triggered.[12] Therefore, the Court fails to see how Petitioner was prejudiced by any inaccurate advice he received regarding the applicability of the cross-reference because he was not sentenced within the increased range that it triggered and the sentence he actually received is within the 168-210 month range that allegedly would have applied if he had pled guilty in a timely fashion.

Moreover, Petitioner's argument that "there exists a reasonable probability that if advised correctly concerning the cross-referencing . . . the movant, who is a first time offender may have received a statutory minimum sentence of 10 years from this honorable Court" is completely belied by the record in this case. See Petitioner's Memorandum (Doc. No. 65) at 5. At the sentencing hearing, the Court stated multiple times that it found the mandatory minimum sentence to be insufficient in light of Petitioner's offense conduct and it explained that a sentence

---

further reasoned that "the amount of rehabilitation the Defendant experiences will likely differ little if at all if he serves more than 10 years but less than 20 years in prison" and stated that his history and characteristics did not support a guideline sentence. (Id.) at 20. The Court concluded that the "policy supporting section 2G2.1 of the guidelines does not apply to the facts of this case." (Id.) at 21.

[11] This range also is based on the assumption that Petitioner would have received all three points for acceptance of responsibility if he had pled guilty in a timely fashion. Assuming for the sake of argument that he would have received such a reduction, his overall offense level would have decreased from 38 to 35. An offense level of 35 combined with a criminal history category of I produces a guideline range of 168-210 months' imprisonment.

[12] Petitioner's guideline range of imprisonment would have been 151-188 months' imprisonment based on an overall offense level of 34 and criminal history category of I.

of ten years would not meet the concerns outlined in 18 U.S.C. § 3553(a). To be sure, the Court specifically determined that "a sentence *five years higher* than the statutory minimum [wa]s sufficient but not greater than necessary to comply with the Section 3553(a) factors." Sentencing Transcript (Doc. No. 53) at 21 (emphasis added).[13] This statement also undermines any argument that the Court would have applied a sentence at the bottom of the 168-210 range which would have applied if Petitioner had pled guilty and received all three acceptance points. Given the Court's specific determination that a sentence <u>five</u> years higher than the mandatory minimum

---

[13] Petitioner also argues that "had this Honorable Court not granted the defense's motion for a downward variance, and rejected the advisory guideline cross-reference in § 2G2.1, with a three-point reduction for acceptance of responsibility [the] advisory guideline sentencing range would have been criminal history category I at offense level 31 for a sentencing range of 108-135." Petitioner's Traverse (Doc. No. 71) at 7. This contention carries no merit for several reasons. First, it is well-established that a district court "must begin with a correct Guidelines calculation and reason from that starting point to the appropriate sentence based on the facts of the individual case and the exercise of the District Court's discretion pursuant to 18 U.S.C. § 3553." United States v. Smalley, 517 F.3d 208, 211 (3d Cir. 2008) (citing United States v. Gunter, 462 F.3d 237, 247 (3d Cir. 2006)). Indeed, "a district court errs when it fails to calculate the Guidelines range correctly or begins from an improper Guidelines range in determining the appropriate sentence." Smalley, 517 F.3d at 211-12. In Gunter, the United States Court of Appeals for the Third Circuit ("Third Circuit") set forth a three-step sentencing procedure that district courts must follow in imposing sentence. 462 F.3d at 247. The first step of the process requires district courts to "continue to calculate a defendant's Guidelines sentence precisely as they would have before [United States v. Booker, 543 U.S. 220 (2005)]." Id. Thus, once it is determined that the application of a certain guideline enhancement or cross-reference is warranted, the Court <u>must</u> apply it in order to accurately calculate and arrive at the proper guideline sentencing range. See e.g., United States v. DiAmbrosio, 251 Fed. Appx. 759, 762 (3d Cir. 2007) ("It is therefore clear that the district court erred in calculating the advisory range under the Guidelines by refusing to impose an enhancement specifically required by the Guidelines."). Accordingly, there exists no reasonable probability that this Court would have declined to apply the cross-reference in § 2G1.3 as doing so would have been a dereliction of its duty to properly calculate the guideline sentencing range. Second, even assuming a scenario where Petitioner would somehow be subjected to the 108-135 range, the question of whether he would have been sentenced within that range squarely contradicts the Court's determination at sentencing that the statutory minimum was insufficient in light of his offense conduct and that "a sentence *five years higher than the statutory minimum*" was appropriate to meet the concerns outlined in Section 3553(a). See Sentencing Transcript (Doc. No. 53) at 21 (emphasis added). The Court notes that a sentence at even the top of the 108-135 range is barely more than one year over the mandatory minimum of 120 months, and therefore, no reasonable probability exists that the Court would have sentenced Petitioner to 135 months' imprisonment.

8

constituted a sentence that was sufficient but not greater than necessary, there exists no reasonable probability that the Court would have imposed the mandatory minimum sentence in this case.

Against this backdrop, Petitioner cannot demonstrate that he was prejudiced by any failure on the part of trial counsel to properly advise him of his sentencing exposure because there is no reasonable probability that Petitioner would have received a sentence below the 180-month sentence imposed. Thus, Petitioner's first argument fails as there exists no reasonable probability that the outcome would have been any different but for counsel's allegedly deficient performance.

Petitioner's second contention likewise lacks merit as he cannot demonstrate that his appellate counsel was ineffective in failing to argue the applicability of Amendment 732 to his case on direct appeal. Amendment 732 was created in 2009 in order to resolve a circuit split regarding the application of the undue influence enhancement under § 2G1.3(b)(2)(B) of the guidelines. See U.S.S.G. Supp. to app. C, amend. 732 at 323 (2009). It directs against the application of the undue influence enhancement in a case where the only "minor" involved in the offense is an undercover law enforcement officer. See id. The Court notes that while the Third Circuit has not spoken to whether Amendment 732 is a clarifying amendment, other circuits to consider the issue have determined that it is.[14] See e.g., United States v. Christensen, 598 F.3d 1201, 1206 (9th Cir. 2010); United States v. Jerchower, 631 F.3d 1181 (11th Cir. 2011); United States v. Ross, 352 Fed. Appx. 771 (4th Cir. 2009). Thus, for an individual who was (i)

---

[14] The Court notes that "a post-sentencing amendment to a guideline, or to its comments, should be given retroactive effect if the amendment 'clarifies' the guideline or comment in place at the time of sentencing." United States v. Marmolejos, 140 F.3d 488, 490 (3d Cir.1998). The Court need not reach the issue of whether Amendment 732 was a clarifying amendment because it has no applicability to the facts of this case.

sentenced prior to the passage of this amendment and (ii) sentenced pursuant to the enhancement under § 2G1.3(b)(2)(B) for unduly influencing a minor who was actually an undercover law enforcement officer, the issue of whether Amendment 732 applies to his or her case on appeal is extremely relevant and has a material bearing on the sentence imposed. Unfortunately for Petitioner, he is not one of these individuals because he was not sentenced under § 2G1.3 of the guidelines – the guideline section to which Amendment 732 applies.

As discussed earlier, Petitioner was not sentenced under §2G1.3 because the cross-reference found in §2G1.3(c)(1) triggered the application of § 2G2.1, an entirely different guideline section. Since § 2G2.1 became the controlling guideline in this case, Petitioner's sentence was calculated pursuant to that guideline section and all of its enhancements/adjustments. In other words, the enhancement under § 2G1.3(b)(2)(B) did not factor into Petitioner's ultimate guideline calculation and did not have any effect on his actual sentence because it was not calculated using any of the enhancements/adjustments under § 2G1.3.[15] As such, the applicability of Amendment 732 was immaterial and irrelevant to any issues on direct appeal and the Court fails to see the prejudice suffered as a result of appellate counsel's decision not to raise a frivolous argument. It is well-established that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999). As such, Petitioner's second claim must fail.

Petitioner's final argument that he was prejudiced by his trial counsel's failure to investigate his mental competency is devoid of merit. As an initial matter, the Court notes that "[c]ounsel's failure to request the trial court to order a hearing or evaluation on the issue of the

---

[15] The Court notes that Petitioner did <u>not</u> receive an undue influence enhancement pursuant to § 2G2.1 of the guidelines.

defendant's competency ... could violate the defendant's right to effective assistance of counsel *provided there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency*, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered." Jermyn v. Horn, 266 F.3d 257, 283 (3d Cir. 2001) (emphasis added). In Dusky v. United States, 362 U.S. 402 (1960) the United States Supreme Court set forth the basic standard for competency, holding that in order to be competent to plead guilty or stand trial, a defendant must have a "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and must possess "a rational as well as factual understanding of the proceedings against him." Id. at 402. A defendant may not be subjected to trial if his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense . . . ." Drope v. Missouri, 420 U.S. 162, 171 (1975). "[B]arring indicia of incompetence, due process does not require that a competency hearing be held." Taylor v. Horn, 504 F.3d 416, 433 (3d Cir. 2007).

Petitioner claims that trial counsel unreasonably failed to investigate his mental competency despite being aware of his history of "extreme depression, confusion, and disorientation." Petitioner's Brief in Support of Motion to Vacate (Doc. No. 65) at 8. He argues that he discussed his "extreme mental depression and periods of amnesia" with his counsel and that he had "ample reason to question whether or not [he] could cooperate intelligently" in the preparation of his defense. (Id.) Petitioner asserts that his counsel was ineffective for failing to obtain his medical records which indicate that he was prescribed medication for depression and also for failing to thoroughly question his father at sentencing as to his mental and emotional issues. (Id.) at 9.

11

As support for his position, Petitioner has done nothing more than advance bald assertions of incompetency and argue that the fact that he was being prescribed depression medication was sufficient to alert his counsel as to his mental incompetency. Furthermore, Petitioner has not highlighted any specific scenarios where his language and/or behavior should have given his counsel cause to question his competence and has not provided any evidence or information that should have caste doubt on his ability to "understand both the nature and object of the proceedings against him." Drope, 420 U.S. at 171. Aside from making bare-boned allegations that he suffered from amnesia and confusion, he has offered no concrete examples of how these conditions altered or interfered with his ability to rationally understand and process the situation he was in. Indeed, Petitioner does not appear to even be claiming incompetency, as he admits in his reply brief that he "has not claimed incompetency to enter a plea, stand trial, or be sentenced." Petitioner's Traverse (Doc. No. 71 at 9). Thus, Petitioner is not alleging prejudice and the evidence would not support such a claim in any event.

Moreover, Petitioner stated that he "did *repeatedly question Mr. Livingston thoroughly concerning all of his options* of going to trial or pleading to both counts" and claims that he would have pled guilty if he had received accurate advice regarding his sentencing exposure. (Doc. No. 65) at 5 (emphasis added). These statements demonstrate that Petitioner was involved intricately in discussions with his attorney regarding his case and defense strategy, was able to comprehend and weigh the various options he had, and understood the consequences he faced. These statements further serve to reinforce the conclusion that Petitioner possessed a "rational as well as factual understanding of the proceedings against him" and was able to "consult with his lawyer with a reasonable degree of rational understanding." Dusky, 362 U.S. at 402.

In light of the above, Petitioner's claim of incompetency loses substantial force. The Court finds that Petitioner's argument fails both prongs of the <u>Strickland</u> test because counsel's decision to not request a competency hearing was objectively reasonable and there exists no reasonable probability that he would have been found incompetent to stand trial if the issue was raised and considered.

### III. <u>Conclusion</u>

For all the above-stated reasons, Petitioner's motion is denied in its entirety. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability may issue under 28 U.S.C. § 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons set forth above, Petitioner has not made a substantial showing of the denial of a constitutional right and a certificate of appealability should not issue in this action.

An appropriate Order will be issued.

Date: <u>January 2, 2013</u>　　　　　　　　　　　　s/Alan N. Bloch
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge

ecf:　Counsel of record

cc:　Calvin Lee Dye, #30125-068
　　　FCI Loretto
　　　P.O. Box 1000
　　　Loretto, PA 15940-1000